| |
|---|
| FAROULH DORLETTE,<br>    *Plaintiff,*<br><br>    v.<br><br>JOHN IOZIA,<br>    *Defendant.* |

No. 3:16-cv-1882 (VAB)

## RULING AND ORDER ON PENDING MOTIONS

Faroulh Dorlette ("Plaintiff"), currently incarcerated at the MacDougall-Walker

Correctional institution ("MacDougall-Walker"), has sued Lieutenant John Iozzia ("Lt. Iozzia")[1]

for civil rights violations after he was put in in-cell restraints at Corrigan-Radgowski

Correctional Institution ("Corrigan-Radgowski") from June 23, 2016 to June 24, 2016 after he

refused to be strip searched by Lt. Iozzia. Compl., ECF No. 1 (Nov. 14, 2016).

Pending before the Court are two motions to amend and a motion for order filed by Mr.

Dorlette.

For the reasons set forth below, the Court will **DENY** the motions to amend and **GRANT**

**in part and DENY in part** the motion for order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court presumes familiarity with the factual background of this case, which is set

forth in the Court's Initial Review Order. Initial Review Order, ECF No. 17 (May 12, 2017)

("IRO").

The Court previously issued an Initial Review Order, which permitted Mr. Dorlette's

Eighth Amendment and conspiracy claims to proceed against the Defendants in their official

---

[1] Mr. Dorlette corrects the spelling of Lt. Iozzia's last name in his Second Motion to Amend. Mot. to Amend, ECF No. 74 at 1 (Oct. 10, 2019) ("Second Mot. to Amend").

capacities. *Id*. at 6. Lt. Iozzia remains as the sole Defendant, as Mr. Dorlette failed to identify the true first and last names of the other two defendants. Order, ECF No. 23 (Dec. 21, 2017). Mr. Dorlette also has a viable Eighth Amendment claim against Lt. Iozzia in his individual capacity for deliberate indifference to health and safety, excessive force, and unconstitutional conditions of confinement, as well as conspiracy to violate his constitutional rights. IRO at 7.

On July 6, 2019, Defendant filed an Answer to Mr. Dorlette's Complaint. Answer, ECF No. 37 (July 10, 2018).

On March 14, 2019, following a telephonic status conference, the Court referred the case to Magistrate Judge Holly B. Fitzsimmons for a Settlement Conference. Order, ECF No. 48 (Apr. 3, 2019).

On July 29, 2019, Mr. Dorlette filed a motion to amend or correct his Complaint. Mot. to Amend/Correct, ECF No. 70 (July 29, 2019) ("First Mot. to Amend"). He seeks to add nine new individuals as defendants, reinstate two individual defendants, add new federal claims and state law claims, and reassert a claim that the Court dismissed on May 19, 2017. First Mot. to Amend at 3-4.

On August 1, 2019, Judge Fitzsimmons held a settlement conference. Minute Entry, ECF No. 71 (Aug. 1, 2019). The parties did not settle. *Id.*

On August 17, 2019, Defendant objected to Mr. Dorlette's first motion to amend stating that the "Amended Complaint seeks to add additional defendants and bring new claims against parties that have never been served and for claims that would be barred by the statute of limitations." Def.'s Obj., ECF No. 72 at 1 (Aug. 17, 2019).

On September 18, 2019, Mr. Dorlette filed an emergency motion. Mot., ECF No. 73 (Sept. 18, 2019) ("Emergency Mot.").

On October 10, 2019, Mr. Dorlette filed a second motion to amend or correct his complaint. Second Mot. to Amend.

## II. STANDARD OF REVIEW

### A. Motions to Amend

Under Federal Rule of Civil Procedure 15(a), "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(2). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Under Rule 15, the decision to grant leave to amend is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citation omitted)); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to

amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

## III. DISCUSSION

### A. First Motion to Amend

Mr. Dorlette may not amend the Complaint as of right because Lt. Iozzia filed an Answer on July 10, 2018, *see* Answer, and Mr. Dorlette did not move to amend until July 29, 2019. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleadings a matter of course within 21 days after serving it, or . . . 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (e), or (f), whichever is earlier.").

Because the Second Amended Complaint seeks leave to file a corrected proposed amended complaint, it is apparent that the relief sought in the first motion is moot.

Accordingly, Mr. Dorlette's first motion to amend is **DENIED** as moot.

### B. Second Motion to Amend

The second motion to amend points out two errors in the first Amended Complaint submitted: a spelling error in one of the Defendant's last names and one paragraph which references the wrong defendant. Second Mot. to Amend at 1. This Amended Complaint also seeks to add Commissioners Scott Semple and Rollin Cook, Warden Antonio Santiago, Deputy Warden Robert Martin, Captains John Shabanas and John Williams, Lieutenant John Toses, and Officers Doec and Romanelli as defendants. *Id*. at 3-4. It also seeks to reinstate Nurse Jeff Doe and Nurse Donna Doe as defendants, add six new federal claims, add one new federal statutory claim, add five new state constitutional claims, add six new state law tort claims, and reassert his Fourteenth Amendment substantive due process claim, which was previously dismissed by the Court's Initial Review Order. *Id*. at 5-31.

### 1. Reinstated Defendants and Fourteenth Amendment Substantive Due Process Claim

Mr. Dorlette was instructed to confirm the first names and provide the last names for both defendants in the Initial Review Order. IRO at 7. Because he did not do so, the claims against these defendants were dismissed by the Court. *See* Order, ECF No. 23 (Dec. 21, 2017) (citing Fed. R. Civ. P. 4(m) and noting Mr. Dorlette failed to identify the first and last names of the two Doe Defendants within ninety days). Because Mr. Dorlette still has not complied with the Court's order and provided the true identity, including first and last names, of the Doe Defendants, the Court denies Mr. Dorlette's motion to amend and reinstate those individuals as defendants. *See Lucente v. Int'l Bus. Machine Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (citation omitted)); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile." (citation omitted)); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (affirming dismissal with prejudice because, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of the [district court's] discretion to deny leave to amend").

Mr. Dorlette also seeks to reinstate his Fourteenth Amendment substantive due process claims and provides no new facts which would make his claim plausible. Nor has Mr. Dorlette moved for reconsideration, even though such a request would now be untimely. *See* D. Conn. L. Civ. R. 7(c) ("Motions for reconsideration . . . shall be filed and severed within seven (7) days of the filing of the decision or order from which relief is sought.").

Accordingly, the Court will not reinstate Mr. Dorlette's Fourteenth Amendment substantive due process claim and will **DENY** this portion of his motion to amend.

## 2. Defendants Semple, Santiago, Martin, Shabanas, Williams, Toses and Doec

Mr. Dorlette alleges that Defendants Semple, Santiago, Martin, Shabanas, Williams, Toeses, and Doec were involved in or aware of the strip search and in-cell restrain placement that allegedly occurred from June 23, 2016 to June 24, 2016. Second Mot. to Amend at 12-16. He asserts Eighth and Fourteenth Amendment claims, as well as two state law tort claims against these Defendants.

A federal court looks to state law to determine the applicable statute of limitations in a Section 1983 action. *See Walker v. Jastremski*, 403 F.3d 560, 561 (2d Cir. 2005). The United States Court of Appeals for the Second Circuit ("Second Circuit") has held that the general personal injury statute of limitations under Connecticut General Statutes § 52-577 should be applied to the filing of section 1983 claims arising in Connecticut. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Section 52-577 sets a three-year statute of limitations period running from "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. Although federal courts look to state law to determine the applicable statute of limitations for claims arising under § 1983, the court looks to federal law to determine when a federal claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of § 1983 cause of action is a question of federal law that is not resolved by reference to state law."). A federal cause of action accrues "when the plaintiff knows or has a reason to know the harm or injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks and citation omitted).

"Rules on tolling, revival, and application" are governed by state law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989). Connecticut recognizes a continuing course of conduct doctrine that may toll the limitations period. *See Watts v. Chittenden*, 301 Conn. 575, 582-84 (2011). In order

to establish the existence of a continuing course of conduct, a plaintiff must provide evidence that the defendant: (1) engaged in wrongful conduct against him or her; (2) owed him or her a continuing duty that was related to the alleged initial misconduct; and (3) continually breached that duty by engaging in subsequent misconduct towards him or her. *See Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 312-13 (2014) (citing *Witt v. St. Vincent's Med. Ctr.*, 252 Conn. 363, 370 (2000)).

The Second Circuit has held that the applicable statute of limitations in a § 1983 action must be "tolled while a prisoner completes the mandatory exhaustion process" under 42 U.S.C. 1997e(a). *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011). "[T]he date on which [the prisoner] first raised his administrative claims demarcates the commencement of the period of time during which he was actively exhausting those claims." *Id.* at 324. The burden to establish entitlement to equitable tolling falls on the plaintiff. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." (internal quotation marks omitted)).

In this case, the statute of limitations would begin running when the alleged incident occurred, under either the state-law or the federal-law standard, because Mr. Dorlette would have "known of the harm or injury that is the basis of the action" as soon as it occurred. *See M.D.*, 334 F.3d at 221. The incident, and all claims flowing from it, occurred more than three years before Mr. Dorlette filed this motion to amend and so, the statute of limitations has run.

Section 52-592 of the Connecticut General Statutes provides a savings provision which is "remedial in nature, 'passed to avoid hardships arising from an unbending enforcement of limitation statutes.'" *Davis v. Family Dollar Store*, 78 Conn. App. 235, 239 (2003) (quoting

*Isaac v. Mount Sinani Hosp.*, 210 Conn. 721, 728 (1989)), *appeal dismissed*, 271 Conn. 655 (2004). It states:

> (a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction . . . the plaintiff . . . may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.

Conn. Gen. Stat. § 52-592(a); *see also Hodges v. Glenholme Sch.*, 713 F. App'x 49, 52 (2d Cir. Nov. 16, 2017) ("Conn. Gen. Stat. § 52-592(a) allows a plaintiff to re-file a dismissed action, within one year of dismissal, if two requirements are met: (1) the original action must have been 'commenced' within the applicable statute of limitations; and (2) the original action must have failed because of one of the specific procedural reasons enumerated in the statute.").

Section 52-592 applies to Plaintiff's state law claims, which consist of intentional infliction of emotional distress, negligence, conversion, detinue, and replevin. It does not apply automatically to federal law claims, but "once a federal court borrows a state statute of limitations, it generally should also borrow the related provisions, pertaining to tolling, revival and so forth, as interpreted under state law, unless such an unmodified borrowing would be inconsistent with a strong federal policy underlying the federal cause of action." *Williams v. State of Conn. Dep't of Corr.*, No. 3:16-cv-01612 (VAB), 2017 WL 2838081, at *4 (D. Conn. June 30, 2017) (quoting *Williams v. Walsh*, 558 F.2d 667, 674 (2d Cir. 1977)).

The savings provision could but does not apply to Mr. Dorlette's claims. His lawsuit does not fits into either of the provisions of Conn. Gent. Stat. § 52-592(a). Accordingly, claims against

these defendants thus are barred by the statute of limitations and Mr. Dorlette's motion to amend will be **DENIED**.

### 3. Defendant Iozzia

Mr. Dorlette moves to add several new claims against Lt. Iozzia: a First Amendment religion claim, a First Amendment retaliation claim, a Fourth Amendment unreasonable search claim, a Religious Land Use and Institutionalized Persons Act claim, three state law tort claims, and four state constitutional claims. Second Mot. to Amend at 7-21. All claims allegedly arise out of the June 23 and 24, 2016 strip search and in-cell restraint placement. *Id*. Mr. Dorlette does not allege that he was unaware of these new claims when he filed his first Complaint in 2016.

Lt. Iozzia objects to Plaintiff's motion for leave to amend because there was previously only one remaining claim, trial is scheduled, and the Amended Complaint seeks to add additional defendants and claims that have not yet been served. Def's Obj. at 1.

At this stage of the litigation, permitting Mr. Dorlette to add these claims against Lt. Iozzia would delay the case unnecessarily and prejudice Lt. Iozzia. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (undue delay, bad faith, dilatory motive, and futility remain "grounds on which denial of leave to amend has long been held proper").

### 4. Defendants Cook and Romanelli

Mr. Dorlette identifies Rollin Cook as the current commissioner of Correction. Second Mot. to Amend at 30. Commissioner Cook was not appointed until 2018.[2] Mr. Dorlette does not allege Commissioner Cook was involved in or aware of the strip search or in-cell restraint incident in June 2016. Second Mot. to Amend at 30-31. Plaintiff alleges Commissioner Cook

---

[2] Scott Semple was the commissioner from 2014-2018. *Commissioners*, Connecticut State Department of Correction, https://portal.ct.gov/DOC/History/History-Commissioners (last visited Jan. 30, 2020).

continued the strip search policy in effect in June 2016. *Id.* at 30. Mr Dorlette, however, does not allege he has undergone this type of strip search since the June 2016 incident. *Id.* at 30-31. Mr. Dorlette articulates no arguable fact or legal basis for any claims against Commissioner Cook regarding the strip search and restraint claims from June 2016. *See F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) ("A proposed amendment . . . is futile when it could not withstand a motion to dismiss.").

Accordingly, the motion to amend and add Commissioner Cook as a defendant is **DENIED**.

As to Officer Romanelli, Mr. Dorlette also seeks to add new federal and state law claims regarding the alleged loss of his personal property items and legal documents that occurred in March 2019 at Garner Correctional Institution ("Garner") him for Officer Romanelli's alleged involvement and responsibility for the loss of Mr. Dorlette's property items and documents. Second Mot. to Amend at 22-30. Although unsupported by fact, Mr. Dorlette alleges that the loss of his property items and any denial of his access to courts based on the loss of his legal documents was due to policies enacted by Commissioner Semple and enforced by Commissioner Cook. *Id.* at 31.

The alleged confiscation of property in March 2019 are not related to the underlying strip search and in-cell restraint claims asserted in the original complaint. Adding these unrelated claims at this stage of the litigation unduly prejudices Lt. Iozzia, the sole defendant, and unduly delay this action. *See Stiller v. Colangelo*, 221 F.R.D. 316, 217 (D. Conn. 2004) (grounds for denial of leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Accordingly, Mr. Dorlette's motion to amend with respect to Defendants Romanelli and Cook is **DENIED**.[3]

### C. Motion for Order

The motion for order, Emergency Mot., is addressed to Magistrate Judge Holly B. Fitzsimmons and is titled "Information and (Emergency) Motion for Order." Emergency Mot. at 1. This motion requests the Clerk appoint *pro bono* counsel; preserve "his rights to file a motion for sanctions" against Assistant Attorney General Steven M. Barry (Lt. Iozzia's counsel) because of Attorney Barry's alleged failure to send copies of documents to him; and order Attorney Barry to furnish a copy of the objection filed to Mr. Dorlette's motion for leave to amend. *Id.*

#### 1. Appointment of Counsel

Mr. Dorlette claims that his mental health is in decline due to his involvement in this case as well as other legal and non-legal matters. Emergency Mot. at 1. He states that "the defendants and its related agents" have exacerbated his mental health conditions by engaging in retaliatory conduct and diversionary tactics in an attempt to curb his litigiousness. *Id.* He claims that prison officials at Walker have denied him legal telephone calls, free copies and other "necessities" to litigate this case and other cases. *Id.* at 2.

Mr. Dorlette seeks the appointment of *pro bono* counsel or an order that prison officials at MacDougall-Walker provide him with free legal calls and photocopies. *Id.* at 5.He also seeks a status conference to address his discovery concerns because he claims that he has still not received all the documents that he requested from Attorney Barry at the settlement conference on

---

[3] Because the Court has denied Mr. Dorlette's motion to add Commissioners Semple and Cook as defendants, the Court will not consider his claim of supervisor liability. Second Mot. to Amend. at 27-28.

August 1, 2019. *Id.* Mr. Dorlette contends that given the exacerbation of his mental health conditions and the existence of a discovery matter that may still need to be resolved, he has demonstrated a legitimate need for the appointment of *pro bono* counsel.

Because it is apparent that this case will be proceeding to trial, the Court concludes that the appointment of *pro bono* counsel to represent Mr. Dorlette would serve the interests of justice. Thus, the request for appointment of *pro bono* counsel is **GRANTED**.

### 2. Request for Copy of Objection to Motion to Amend

Mr. Dorlette maintains that he did not receive copies of documents filed by Lt. Iozzia on two occasions: first, was a copy of the Status Report filed on May 16, 2019, Status Report, ECF No. 60 (May 16, 2019) ("Status Report"); and second, a copy of Lt. Iozzia's objection, Def.'s Obj.

As Mr. Dorlette is incarcerated and unable to view documents filed electronically, Defendant's counsel must mail copies or deliver by other means, an actual copy of any motion, memorandum, objection, status report, or other document filed in this case.

Mr. Dorlette also states that during the settlement conference held by Magistrate Judge Fitzsimmons on August 1, 2019, he told her he had served a discovery request on Lt. Iozzia at some point in 2018 but had not received a response to his request. Emergency Mot. at 5. Mr. Dorlette provided a copy of the discovery request to Attorney Barry at the conference who representend that he would "take action" on the matter, but has not done so. *Id.*

Mr. Dorlette has not submitted a copy of the 2018 discovery request and does not indicate that he made any attempt to contact or discuss the discovery request with Attorney Barry after the August 1, 2019 settlement conference as required by Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 37(b)1.

The Court directs Attorney Barry to mail or deliver a copy of the Defendant's objection and to file a notice with the Court indicating the date on which he mailed or delivered the copy to Mr. Dorlette. As Mr. Dorlette claims he received the copy of the status report from another individual, Defendant's counsel need not send a copy of the status report. Emergency Mot. at 2. The Court denies without prejudice to re-filing. Mr. Dorlette's claims regarding his discovery request until he has demonstrated attempts to contact or discuss the request with Attorney Barry.

### 3. Request to File a Motion for Sanctions

Arguments that are presented to "harass, cause unnecessary delay, or needlessly increase the cost of litigation," and "claims, defenses, and other legal contentions [that] are [un]warranted by existing law or [are supported by] []frivolous argument[s], for extending, modifying, or reversing existing law or for establishing new law . . ." permit "the court [to] impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(b)-(c). Rule 11 provides, in pertinent part:

> (2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c). "These procedural protections are intended to reduce the number of motions for sanctions and to provide opportunities for parties to avoid sanctions altogether." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 141-42 (2d Cir. 2002) (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327 (2d Cir. 1995)).

Mr. Dorlette contends that Lt. Iozzia is "lying and attempting to deceive the [C]ourt" and that the Court should consider imposing sanctions on him. Emergency Mot. at 2. The crux of his claim is Mr. Dorlette's perceived delay in receiving his property after he had moved from Corrigan to Garner Correctional institution. *Id*. at 3-5.[4]

Mr. Dorlette does not allege that Lt. Iozzia was involved in the alleged confiscation of his personal property or legal documents, or any of the delay in forwarding his property items and documents to him. He asks that the Court issue an order to show cause as to why Lt. Iozzia and Attorney Barry should not be sanctioned based on the failure of Attorney Barry to provide him with copies of documents that he has filed with the Court or documents in response to his discovery request.

These issues, however, do not warrant the imposition of sanctions. *See Star Stark Mgmt., Inc. v. Koon Chung Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) ("[t]he operative question is whether the argument is frivolous, i.e., the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'" (alteration in the original) (citation omitted)); *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995) (To grant a motion for sanctions, a court must conclude that it is "patently clear that a claim has absolutely no chance of success" or that the factual claims are "utterly lacking in support." (citation and internal quotation marks omitted)). Furthermore, absent any attempt by Mr. Dorlette to resolve any discovery dispute that he may have with Attorney Barry prior to filing his motion or to inform the Court of the nature of his discovery request, there is no basis for sanctioning Attorney Barry.

---

[4] The Status Report filed by Lt. Iozzia informed Judge Fitzsimmons that Mr. Dorlette's boxes of property had been received by April 9, 2019 and that other prison officials at other facilities would continue to look for any legal documents that may not have been forwarded to Mr. Dorlette. Status Report at 1-2.

To the extent that Mr. Dorlette seeks sanctions against Lt. Iozzia or Attorney Barry, or the issuance of an order directing counsel to show cause as to why he and Lt. Iozzia should not be sanctioned, the request is **DENIED**.

## IV.    CONCLUSION

For the reasons explained above, the Court **DENIES** the First Motion to Amend (**ECF No. 70**) as moot and **DENIES** the Second Motion to Amend (**ECF No. 74**). The Emergency Motion for Order (**ECF No. 73**) is **GRANTED** to the extent that Mr. Dorlette seeks the appointment of pro bono counsel and a copy of the Defendant's Objection. His Emergency Motion for Order is **DENIED** in all other respects.

Attorney Barry is directed to mail or deliver by other means a copy of the Defendant's Objection by **February 14, 2020**.

The Clerk of Court is respectfully requested to amend the caption to reflect the proper spelling of Lt. Iozzia's last name, and to appoint pro bono counsel.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of January, 2020.

      /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge